UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANTONIO ARMSTRONG,**

    **Petitioner,**

v.                                  Case No. 8:23-cv-58-MSS-LSG

**SECRETARY, DEPARTMENT OF CORRECTIONS,**

    **Respondent.**

___

**ORDER**

Antonio Armstrong petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state-court convictions for robbery with a firearm, carjacking, and resisting an officer without violence. After reviewing the petition (Dkt. 1), the response (Dkt. 7), and the appendix containing the relevant state-court record (Dkt. 7-2), the Court **DENIES** the petition.[1]

**I.    BACKGROUND**

On May 6, 2018, Armstrong and his friend Deaveon Brown drove from Haines City to Tampa. (Dkt. 7-2, Ex. 6, at 44) The plan was to "see some females."[2] (Id. at 45) On the way to Tampa, the two stopped at a gas station. (Id. at 46) They realized they had no money. (Id. at 46, 49) Armstrong proposed a robbery, and Brown "ended

___

[1] Armstrong did not file a reply.

[2] Brown testified at trial as a witness for the State. (Dkt. 7-2, Ex. 6, at 39-41)

up agreeing." (Id. at 49) They "rode around for a few minutes," stopping at a house under construction in West Tampa. (Id. at 49, 113) Three men were "outside working" when Armstrong and Brown arrived. (Id. at 49, 51) Brown pulled up his shirt, displayed a handgun in his waistband, and "told [the victims] to give us the money they had." (Id. at 51, 53-54) Armstrong proceeded to take "their belongings out of their pockets." (Id. at 53) The two then got in the car and drove away. (Id. at 57)

Unbeknownst to Armstrong and Brown, the victims had decided to follow them. (Id. at 73) One of the victims—Jarold Walters—called 911 as they were pursuing the robbers on the interstate. (Id.) Walters told the dispatcher that "[t]hey had a pistol, and we were robbed at gunpoint, three of us." (Id. at 75) He described the robbers' vehicle as a "gray Chevy Malibu" and gave a license plate number. (Id. at 74) Armstrong and Brown stopped at a gas station off I-4, and the victims parked nearby. (Id. at 58, 84-85, 143) Armstrong got out of the car, paid for $30 worth of gas with a $100 bill, and began pumping gas. (Id. at 100-01, 133)

Less than a minute later, law enforcement arrived at the gas station. (Id. at 58, 142-43) Officers saw a Chevy Malibu that matched Walters's description. (Id. at 143, 145) Its license plate number was "one letter off [from] what dispatch was given."[3] (Id. at 143) Brown was sitting in the front passenger seat; Armstrong was still pumping gas. (Id. at 142, 146) Officers approached the vehicle and detained Brown. (Id. at 60) Armstrong "took off running around the gas station," leaving his driver's license in the

---

[3] Walters told the dispatcher that the license plate read CIH695. (Dkt. 7-2, Ex. 6, at 144) The actual license plate number was CIHS95. (Id.)

2

car. (Id. at 60, 188) He "ended up hopping in" a blue BMW "at the next pump over." (Id.) The owner of the BMW tried to stop Armstrong by "grabb[ing] his foot." (Id. at 86) Armstrong kicked him a "couple of times" and managed to drive away. (Id. at 87-88) The BMW was eventually recovered on a highway in Auburndale. (Id. at 208)

Law enforcement later learned that Armstrong had borrowed the Chevy Malibu from his girlfriend, Shaquota Adams. (Id. at 108) Adams viewed surveillance footage from the gas station off I-4 and identified Armstrong as the man who had bought $30 worth of gas with a $100 bill. (Id. at 105) Moreover, Armstrong had left his DNA on a "DVD case" recovered from the "center console" of the Chevy Malibu. (Id. at 185-86) Law enforcement also found a "piece of mail" on the back seat of the Chevy Malibu; it was addressed to "Mr. Antonio Armstrong." (Id. at 161)

Armstrong was charged with robbery with a firearm, carjacking, and resisting an officer without violence. (Id., Ex. 2) The case went to trial. (Id., Ex. 6) A jury found Armstrong guilty as charged, and he received a mandatory sentence of life imprisonment.[4] (Id., Exs. 8, 10) The appellate court affirmed the convictions without a written opinion. (Id., Ex. 20) Armstrong unsuccessfully moved for postconviction relief under Florida Rule of Criminal Procedure 3.850 and Florida Rule of Appellate Procedure 9.141(d). (Id., Exs. 22, 25-26, 31, 33-34) This federal habeas petition followed. (Dkt. 1)

---

[4] Armstrong faced a mandatory life sentence because he qualified as a prison releasee reoffender. (Dkt. 7-2, Ex. 6, at 13) He had several prior convictions, including for "attempted murder in the first degree." (Id., Ex. 12, at 7) During a pretrial hearing, Armstrong stated on the record that he had rejected the prosecution's plea offer of "25 years [in prison] followed by five years [of] probation." (Id., Ex. 4, at 5-6)

## II. LEGAL STANDARDS

### A. AEDPA

Because Armstrong filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA governs his claims. Lindh v. Murphy, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the

4

prisoner's case." Id. at 413. Clearly established federal law refers to the holding of an opinion by the United States Supreme Court at the time of the relevant state-court decision. Id. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

### B.     Ineffective Assistance of Counsel

Armstrong asserts ineffective assistance of counsel—a difficult claim to sustain. Strickland v. Washington, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[A] court deciding an

5

actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690-91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

Because the standards under Strickland and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" Nance v. Warden, Ga. Diag. Prison, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

### C. Exhaustion and Procedural Default

A petitioner must exhaust the remedies available in state court before a federal

6

court can grant habeas relief. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Picard v. Connor, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A federal court may stay—or dismiss without prejudice—a habeas case to allow a petitioner to return to state court to exhaust a claim. Rhines v. Weber, 544 U.S. 269 (2005); Rose v. Lundy, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally barred. Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

Also, a petitioner's failure to comply with a state procedural rule governing the proper presentation of a claim bars review of that claim on federal habeas. Coleman, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests

solidly on state-law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair" manner. Id. (citing Card v. Dugger, 911 F.2d 1494, 1516-17 (11th Cir. 1990)).

To excuse a procedural bar on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. Maples v. Thomas, 565 U.S. 266, 280 (2012); House v. Bell, 547 U.S. 518, 536-37 (2006).

### III. DISCUSSION

#### A. Ground One—Alleged Confrontation Clause Violation

Armstrong contends that the trial court violated the Confrontation Clause by limiting his cross-examination of Officer Matthew Smith. (Dkt. 1 at 5; see also Dkt. 7-2, Ex. 17, at 18-19) According to Armstrong, he "should have been allowed to cross-examine" Officer Smith about Jarold Walters's "failure to identify [Armstrong] as the person who robbed him." (Dkt. 1 at 6) Officer Smith took Walters's statement after the robbery, but a different officer—Juan Santos—administered a "photo pack" to him. (Dkt. 7-2, Ex. 5, at 15-16; Dkt. 7-2, Ex. 6, at 115) Neither Walters nor Officer Santos testified at trial.[5]

---

[5] After the robbery, Walters moved to Tennessee. (Dkt. 7-2, Ex. 6, at 15) The prosecution spoke with him on the phone and "demanded that he be present" at trial, but he "failed to appear." (Id.) As for Officer Santos, defense counsel did not subpoena him before trial because she believed Walters would testify. (Id., Ex. 5, at 15-16)

8

On cross-examination, Officer Smith acknowledged that a photo pack had been administered to Walters. (Id., Ex. 6, at 118) Counsel tried to ask whether Walters identified anybody from the photo pack, but the prosecution objected. (Id. at 118-19) The court sustained the objection on hearsay grounds, explaining that Officer Smith knew about the photo pack only because someone else had "told him" about it. (Id. at 120-21) As a result, the jury never learned that Walters could not identify Armstrong from the photo pack.

Armstrong argues that "[b]y cutting off the cross-examination, the trial court improperly curtailed defense counsel's ability to place his theory fully before the jury." (Dkt. 1 at 6) This claim fails because the challenged ruling did not cause "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioners "are not entitled to habeas relief based on trial error unless they can establish that [the error] resulted in actual prejudice." Id. "To show prejudice under Brecht, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1114 (11th Cir. 2012). An error "is likely to be harmless under the Brecht standard where there is significant corroborating evidence or where other evidence of guilt is overwhelming." Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1313 (11th Cir. 2012). "The standard for granting habeas relief under Brecht is extremely demanding." Al-Amin v. Warden Ga. Dep't of Corr., 932 F.3d 1291, 1303 (11th Cir. 2019).

Armstrong cannot satisfy Brecht because the prosecution presented "overwhelming" evidence of his guilt. Mansfield, 679 F.3d at 1313. Armstrong's

9

accomplice, Deaveon Brown, testified in detail about Armstrong's role in the incident. (Dkt. 7-2, Ex. 6, at 48-60) Brown explained that Armstrong came up with the idea to "rob[ ] someone," took the victims' belongings during the robbery, drove to a gas station to purchase gas, and then fled from law enforcement in a stolen BMW. (Id.) This account was supported by "significant corroborating evidence." Mansfield, 679 F.3d at 1313. In his 911 call, Walters said that he and his coworkers had been "robbed at gunpoint" by two men in their mid-twenties. (Dkt. 7-2, Ex. 6, at 75, 81) As he followed the robbers down the interstate, Walters described their vehicle as a "gray Chevy Malibu," gave a license plate number, and led police to the gas station where the robbers stopped. (Id. at 74, 142-43) Officers found the Chevy Malibu at the gas station; its license plate number was "one letter off [from] what dispatch was given." (Id. at 143, 145) Armstrong was pumping gas into the Chevy Malibu, and Brown was in the front passenger seat. (Id. at 142, 146) Law enforcement "chased [Armstrong] around" the gas station until he "got into [the BMW] and left the scene." (Id. at 133) Armstrong left his driver's license in the Chevy Malibu, and law enforcement found his DNA on a DVD case in the vehicle. (Id. at 185-86, 188)

As this summary makes clear, "the case against [Armstrong] was overwhelming." Hull v. Sec'y, Fla. Dep't of Corr., 572 F. App'x 697, 702 (11th Cir. 2014) (constitutional error harmless under Brecht where "evidence of [petitioner's] guilt was strong").[6] Given the strength of the prosecution's case, Armstrong cannot

---

[6] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

10

show "more than a reasonable possibility" that the outcome would have been different had the jury learned that Walters could not identify him from a photo pack. Trepal, 684 F.3d at 1114. Thus, any error in excluding this evidence was harmless. See Johnson v. Sec'y, Fla. Dep't of Corr., 132 F.4th 1309, 1318 (11th Cir. 2025) (no prejudice under Brecht where "other evidence of guilt" was "overwhelming").

### B. Ground Two—Prohibition of Comment on Walters's Failure to Testify

Armstrong argues that the trial court violated the federal constitution by "ruling that there would be no comment or inference drawn regarding the failure of Jarold Walters to testify." (Dkt. 1 at 8) Walters moved to Tennessee after the robbery, and he "failed to appear" for trial despite the prosecution's "demand[ ] that he be present." (Dkt. 7-2, Ex. 6, at 15) Before opening statements, the court "agree[d] with the State" that "there [would] be no comment or inference drawn regarding" Walters's failure to testify. (Id. at 21) The court explained that under Florida law, when an uncalled witness is "equally unavailable to both parties, no inference should be drawn or comments made on the failure of either party to call the witness." (Id. at 20) Armstrong now contends that he "should have been able to argue that reasonable doubt [arose] from Walters's failure to testify." (Dkt. 1 at 8-9)

Respondent is correct that this claim is unexhausted and procedurally defaulted. (Dkt. 7 at 19-20) Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue

11

can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin, 541 U.S. at 32. Thus, "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 458 (11th Cir. 2015).

Armstrong argued on direct appeal that the "trial court abused its discretion in ruling that there would be no comment or inference drawn regarding the failure of Jarold Walters to testify." (Dkt. 7-2, Ex. 17, at 15) But Armstong did not contend that this ruling violated any right under the federal constitution. Nor did he cite any provision of the federal constitution. Instead, he relied entirely on Florida caselaw to support his argument that the trial court "abused its discretion." (Id. at 21-23; see also id., Ex. 19, at 8-10) "Under these circumstances, [Armstrong] cannot be said to have fairly apprised the state court of his federal . . . claim." Preston, 785 F.3d at 459.

Armstrong cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. See Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, Ground Two is procedurally defaulted. See Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is

12

established."). And because Armstrong has not shown that an exception applies to overcome the default, this claim is barred from federal habeas review.[7]

### C. Ground Three—Failure to Challenge Armed Robbery Conviction on Direct Appeal

Armstrong faults appellate counsel for not arguing that the prosecution failed to prove robbery with a firearm. (Dkt. 1 at 10-11) According to Armstrong, "there was no evidence to show that anyone other than Brown [his accomplice] had possession of a firearm" during the robbery. (Dkt. 7-2, Ex. 33, at 5) As a result, the evidence was allegedly insufficient to "sustain the conviction" for robbery with a firearm. (Dkt. 1 at 10) Armstrong contends that counsel was "deficient . . . in not raising" this argument on direct appeal. (Id. at 10-11)

The appellate court rejected Armstrong's ineffective assistance claim in an unexplained decision. (Dkt. 7-2, Ex. 34) "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. Armstrong cannot meet his burden.

"[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994). Armstrong's sufficiency challenge is meritless, so counsel was not deficient for failing to pursue it. The evidence demonstrated that Brown alone possessed a firearm

---

[7] To the extent Armstrong challenges the state court's application of Florida law, the Court notes that any such claim cannot support federal habeas relief. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

during the robbery. But it does not follow that Armstrong could not be convicted of robbery with a firearm. Under Florida law, "if any one participant in a robbery carried a firearm during the commission of the crime, all of the participants are guilty as principals" of robbery with a firearm.[8] Jones v. State, 648 So. 2d 1210, 1211 (Fla. 4th DCA 1995); see also Dotel v. State, 175 So. 3d 830, 832 (Fla. 4th DCA 2015) (noting that "possession of a firearm by a codefendant is sufficient to convict a defendant of armed robbery"). Armstrong did not possess a firearm, but he actively participated in a robbery with Brown, who admitted to displaying a handgun to the victims. (Dkt. 7-2, Ex. 6, at 51-54) Thus, the "law of principals" allowed Armstrong to be convicted of robbery with a firearm "regardless of whether he personally possessed a firearm." Lopez v. State, 833 So. 2d 283, 284 (Fla. 5th DCA 2002) (holding that, because accomplice "used a gun," defendant was lawfully convicted of "robbery with a firearm" despite jury finding that he "did not carry, display, use, or possess a firearm").

### D. Ground Four—Failure to Challenge Alleged Absence of Evidence That Armstrong "Took a Motor Vehicle"

Armstrong faults appellate counsel for failing to raise a claim of ineffective assistance of trial counsel.[9] (Dkt. 1 at 13) According to Armstrong, trial counsel should have argued that "the State did not present competent evidence to establish that

---

[8] The jury in Armstrong's case received the standard instruction on principal liability. (Dkt. 7-2, Ex. 6, at 275)

[9] In Florida, "[t]he general rule is that a claim of ineffective assistance of counsel may not be raised on direct appeal." Corzo v. State, 806 So. 2d 642, 645 (Fla. 2d DCA 2002). "On rare occasions, the appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable." Id.

14

[he] took a motor vehicle from the custody of Ahmid Lewis," the owner of the blue BMW. (Id.) In support, Armstrong points out that Lewis "did not identify [him] as [the] person who took his car." (Id.)

Because the appellate court rejected this claim without explanation, (Dkt. 7-2, Ex. 34), Armstrong must show that there was "no reasonable basis" to deny relief. Richter, 562 U.S. at 98. He cannot do so.

Deciding whether appellate counsel was ineffective "requires determining whether trial counsel was ineffective in the first place." Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017). Here, trial counsel was not deficient for failing to raise Armstrong's meritless argument. Thus, "appellate counsel's failure to argue that trial counsel was ineffective could not have prejudiced" Armstrong. Burke v. Warden, No. 21-11224, 2022 WL 2915693, at *3 (11th Cir. July 25, 2022); see also Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) ("It is also crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim.").

Lewis, the owner of the BMW, could not identify Armstrong (or anyone else) as the "person who took [his] vehicle." (Dkt. 7-2, Ex. 6, at 89-90) But Sgt. Tracey Baumann witnessed the incident, and she made an in-court identification of Armstrong as the man who stole the BMW and "left the scene." (Id. at 133-35) Indeed, Sgt. Baumann testified that she got "a good look at" Armstrong during the incident. (Id. at 133) Moreover, Brown (Armstrong's accomplice) testified that Armstrong "ended up hopping in" a blue BMW after law enforcement arrived. (Id. at 60) On this

15

record, trial counsel had no basis to argue that the State "did not present competent evidence to establish that [Armstrong] took" the BMW. (Dkt. 1 at 13) Thus, Armstrong suffered no "actual prejudice from [his] appellate attorney's failure to raise [this] meritless claim." Brown, 720 F.3d at 1335.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Armstrong's petition for writ of habeas corpus, (Dkt. 1), is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment against Armstrong and to **CLOSE** this case.

3. Because Armstrong neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Tampa, Florida, this 16th day of September 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE